**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| WADE ALFORD,<br>　　　　　　Appellant,<br><br>　　　v.<br><br>UNITED STATES POSTAL SERVICE,<br>　　　　　　Agency. | DOCKET NUMBER<br>DE-4324-20-0132-I-1<br><br><br>DATE: April 16, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

J.R. Pritchett, McCammon, Idaho, for the appellant.

Kirk C. Lusty, Esquire, Sandy, Utah, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which denied his request for corrective action under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA). Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application

---

[1]A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant, a preference eligible veteran, was a City Carrier for the agency. Initial Appeal File (IAF), Tab 18 at 34, 70. On December 11, 2019, a coworker knocked over a pile of mail that the appellant was preparing to load into his vehicle. Hearing Transcript (HT) at 7-10 (testimony of the appellant). The next morning, the appellant confronted this coworker about the incident, which led to a heated verbal altercation that almost turned physical before some other employees intervened. HT at 10-16 (testimony of the appellant). The appellant's supervisor, who witnessed the incident, promptly placed the appellant on paid emergency leave, citing "threatening behavior." IAF, Tab 18 at 21; HT at 48-50 (testimony of the supervisor). He declined to put the appellant's coworker, a

nonveteran, on emergency placement.[2]   HT at 65, 67-68 (testimony of the supervisor).

The appellant was still on paid emergency leave when, on January 13, 2020, he filed the instant USERRA appeal.   IAF, Tab 1.   He contested the placement on leave and the attendant loss of overtime opportunities, alleging that these actions were based on his uniformed service.[3]   IAF, Tab 32 at 5.   After a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action.   IAF, Tab 46, Initial Decision (ID).   He found that the appellant failed to prove that his uniformed service was a substantial or motivating factor in the agency's actions.   ID at 4-8.

The appellant has filed a petition for review, disputing the administrative judge's findings of fact and credibility determinations, particularly with regard to

---

[2] The agency eventually removed the appellant over this incident.   The appellant appealed the removal action, which is the subject of *Alford v. U.S. Postal Service*, MSPB Docket Nos. DE-0752-20-0208-I-1 and DE-0752-20-0208-I-2.   During the pendency of the removal appeal, the agency rescinded the initial removal action and issued a new decision removing the appellant, which is the subject of *Alford v. U.S. Postal Service*, MSPB Docket No. DE-0752-21-0103-I-1.   After the record closed on petition for review, the appellant sought to raise an additional argument that the administrative judge abused his discretion in denying his motion to amend the instant appeal to include the first removal action.   PFR File, Tab 13 at 3; IAF, Tab 28 at 1-2. The administrative judge has broad authority to control the proceedings before him, including the authority to rule on motions.   5 C.F.R. § 1201.41(b)(8).   Not only is the appellant's objection to the administrative judge's ruling untimely, but we find no abuse of discretion in that ruling because the appellant filed his motion at an advanced stage of the proceedings below and he had already filed a separate appeal of his removal at the time he filed his motion.   IAF, Tab 28 at 1-2.   Nor has the appellant shown that the administrative judge's ruling prejudiced his substantive rights.   *See Karapinka v. Department of Energy*, 6 M.S.P.R. 124, 127 (1981) (holding that an administrative judge's procedural error is of no legal consequence unless it is shown to have adversely affected a party's substantive rights).

[3] Apart from his uniformed service, the appellant alleged that the agency retaliated against him for his prior participation in USERRA proceedings on behalf of another employee.   IAF, Tab 11 at 4.   The administrative judge found that the appellant failed to make a nonfrivolous allegation in this regard, and the appellant has not challenged the administrative judge's finding.   IAF, Tab 16 at 3 n.2.   The appellant also raised claims related to two nonselections in 2014, but he withdrew these claims prior to the hearing. IAF, Tab 42 at 4.

what happened during the December 12, 2019 altercation.  Petition for Review (PFR) File, Tab 3.[4]  The agency has filed a response.[5]  PFR File, Tab 8.

## ANALYSIS

Under 38 U.S.C. § 4311(a), a person who has performed service in a uniformed service shall not be denied employment or any benefit of employment by an employer on the basis of that performance of service.  An employer is considered to have engaged in an action prohibited by 38 U.S.C. § 4311(a) if the person's service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such service.  38 U.S.C. § 4311(c)(1).

---

[4] The appellant initially filed his petition for review electronically before following up during the petition for review filing period with a substantially similar submission via facsimile.  PFR File, Tabs 1, 3.  The appellant subsequently faxed another two "replacement pages," both of which appear to be identical to page 5 of the first fax.  PFR File, Tab 3 at 5, Tab 4 at 2-3.  In addressing the appellant's arguments on review, we will cite to the petition for review found at Tab 3 of the petition for review file because this petition appears to encompass all the content of the other two submissions.

[5] After the close of the record on review, the appellant filed a motion for leave to submit additional evidence.  PFR File, Tab 10.  Specifically, he alleges that, during the course of proceedings in a subsequent Board appeal, he came into possession of "information/affidavits" in a related equal employment opportunity (EEO) case that support his version of events.  *Id*. at 3.  He has amended his motion to include a request to submit hearing testimony from his appeals of his first and second removals, which he offers to prove inconsistencies in the testimony of an agency witness.  PFR File, Tab 13.  However, it is well settled that, to constitute new and material evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.  *Grassell v. Department of Transportation*, 40 M.S.P.R. 554, 564 (1989).  The appellant has not explained why he was unable to timely obtain the information set forth in the affidavits from his EEO case.  We recognize that the hearing in his removal appeals was held after the initial decision was issued in this case.  *Alford v. U.S. Postal Service*, MSPB Docket No. DE-0752-20-0208-I-2, Initial Appeal File, Tabs 27-29.  Nonetheless when, as here, evidence is offered merely to impeach the credibility of a witness, it is generally not considered new evidence warranting the granting of a petition for review.  *De Le Gal v. Department of Justice*, 79 M.S.P.R. 396, 400 (1998), *aff'd per curiam*, 194 F.3d 1336 (Fed. Cir. 1999) (Table).  Therefore, we deny the appellant's motion and amended motion.

In a USERRA appeal, an appellant initially must show by preponderant evidence that his military status was at least a substantial or motivating factor in the agency's action, upon which the agency must prove, also by preponderant evidence, that the same action would have been taken for a valid reason despite the appellant's protected status. *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1013-15 (Fed. Cir. 2001). Military service is a motivating factor for an employment action if the agency "relied on, took into account, considered, or conditioned its decision" on the appellant's military status. *Erickson v. U.S. Postal Service*, 571 F.3d 1364, 1368 (Fed. Cir. 2009). Discriminatory motivation under USERRA may be reasonably inferred from a variety of factors, including proximity in time between the appellant's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the agency, the agency's expressed hostility towards members protected by the statute together with knowledge of the appellant's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Sheehan*, 240 F.3d at 1014. In determining whether an appellant has proven that his protected status or activity was part of the motivation for the agency's conduct, all record evidence may be considered, including the agency's explanation for the actions taken. *Id*.

In this case, the administrative judge summarized the appellant's arguments as that the appellant, a veteran, was treated differently than his coworker, a nonveteran, that his coworker and supervisor were afraid of him because he was a veteran, and that the first question a Postal Inspector asked him during the investigation was about his veteran status. ID at 4-5. However, the administrative judge found that the Postal Inspector, also a veteran, asked the appellant this question at the beginning of the interview in an attempt to build rapport with him. He found no indication that the question, in this context, suggested any bias by the Postal Inspector. ID at 5-6. The administrative judge also found no evidence to support the appellant's allegation that his coworker and

his supervisor were afraid of him because of his veteran status, and that it was not clear that the coworker even knew that the appellant was a veteran. ID at 5. The administrative judge also credited the supervisor's explanation that he treated the appellant and the coworker differently because he perceived the appellant as the aggressor in the December 11, 2019 altercation. ID at 6-8.

On petition for review, the appellant's arguments are chiefly directed toward the administrative judge's findings of fact and credibility determinations about what happened during the December 11, 2019 altercation, and hence whether the supervisor sincerely believed that the appellant was the aggressor.[6] In this case, the administrative judge's credibility determinations were grounded explicitly in witness demeanor after a video hearing. ID at 6. Hence, the Board owes these credibility determinations deference, and it may overturn them only if it has "sufficiently sound" reasons to do so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). We find that the appellant's arguments do not provide us with sufficiently sound reasons to part from the administrative judge's conclusions.

The appellant points out several alleged inconsistencies in his supervisor's and coworker's testimonies. Regarding his coworker, the appellant alleges that his hearing testimony was inconsistent with his written statement of December 12, 2019, concerning how the two men bumped chests during this incident. PFR File, Tab 3 at 8-9. The coworker wrote in his December 12, 2019 statement in relevant part that, after the initial confrontation, "As I started to walk to the time clock he cut me off and got very aggressively in my face to the point

_____

[6] The appellant asserts that the administrative judge's credibility determinations are indicative of bias. PFR File, Tab 3 at 3. A party claiming bias or prejudgment by an administrative judge must overcome the presumption of honesty and integrity that accompanies administrative adjudicators; mere conclusory statements do not provide a sufficient basis to establish bias. *Higgins v. U.S. Postal Service*, 43 M.S.P.R. 66, 68 (1989). We find that the appellant's allegation that the administrative judge was biased merely demonstrates his disagreement with the administrative judge's credibility determinations. *See Ignacio v. Department of the Air Force*, 12 M.S.P.R. 648, 251-52 (1982).

his chest bumped my chest." IAF, Tab 32 at 14. In his hearing testimony, the coworker stated, "As I turned to walk away, he got literally -- well, he bumped me with his chest," and "as I turned to start walking away, he kind of cut me off and bumped me with his chest." HT at 92-93 (testimony of the coworker). There is nothing inconsistent about these two accounts.

Regarding the supervisor, the appellant argues that his testimony about the chest bump was inconsistent with the coworker's testimony. PFR File, Tab 3 at 8. The supervisor testified in relevant part that, after the coworker started walking towards the time clock, the appellant "made contact with shoulder and chest area right here to forcibly turn him back around 180 degrees to be face-to-face." HT at 8 (testimony of the supervisor). Although the supervisor's account is somewhat different in its description of this event, we do not find it to be inconsistent. The appellant also argues that his supervisor contradicted himself by testifying in one place that the appellant got closer to his coworker, and in another place that both men got closer to each other. PFR File, Tab 3 at 3-4. However, we have reviewed the portion of the transcript that the appellant cites, and we do not conclude that the supervisor contradicted himself. HT at 55 (testimony of the supervisor). Although the phrase "they got even closer" could be interpreted to mean that both men approached each other, it could also be interpreted to mean that one man approached the other.

The appellant points to another alleged contradiction, when his supervisor testified that he gave the appellant the option of either going home or staying at work calmly, but then decided to place the appellant on emergency leave. PFR File, Tab 3 at 5. We see no contradiction in the testimony. As the supervisor explained it, he initially informed the appellant that he could continue on his shift, but shortly thereafter he decided that the appellant needed to go home. HT at 49-50 (testimony of the supervisor). The supervisor may have changed his mind, but he did not contradict himself.

The appellant also argues that the supervisor contradicted himself on the matter of whether he felt threatened by the appellant. PFR File, Tab 3 at 9. The supervisor testified that he did not feel threatened or intimidated by the appellant until December 13, 2019, the day after the altercation, when the appellant wanted to return to work and discuss the situation. HT at 60 (testimony of the supervisor). In light of this, the appellant argues that the supervisor lied to the Postal Inspectors when he told them that he feared or felt intimidated by him. PFR File, Tab 3 at 9, HT at 61 (testimony of the supervisor). We disagree. Although the record shows that the Postal Inspectors conducted initial interviews, including an interview with the appellant's supervisor, on December 12, 2019, IAF, Tab 38 at 12, the record does not establish that the supervisor told them that he was fearful or intimidated on that date rather than some time later, after the appellant requested to return to work. We do not have a sufficient basis to find a contradiction in the supervisor's actions or testimony, much less one of sufficient concern for us to disturb the administrative judge's demeanor-based credibility determination.

The appellant also argues that the administrative judge either failed to consider or misinterpreted several facts related to the December 12, 2019 altercation. First, he disputes the administrative judge's finding that he arrived at work earlier than normal on the day in question. PFR File, Tab 3 at 4, 9; ID at 6. However, not only has the appellant failed to provide any contrary evidence, in response to a notice of proposed adverse action, he stated himself that he "came into the office a little earlier than usual" that day to confront his coworker. IAF, Tab 33 at 7. The appellant also disputes the significance of him calling his coworker by his formal name rather than his nickname when he confronted him, pointing out that the administrative judge called the coworker by his formal name. PFR File, Tab 4 at 4; ID at 6. We are not persuaded by this argument because, unlike the appellant, the administrative judge is not a colleague and acquaintance of the coworker who customarily calls him by his nickname. The

appellant also disputes the significance of his locking eyes with his coworker, arguing that he was standing at the military position of attention in order to get his supervisor's attention. ID at 7-8. We do not accept the appellant's explanation that he was standing at attention to help diffuse the situation or the inference that standing at attention involves staring down a coworker.

The appellant further argues that the evidence shows that his coworker was at least as much at fault as he was for the altercation, and that his coworker should have been placed on emergency leave as well. Again, he argues that his supervisor's testimony shows that he and his coworker moved closer to each other during the confrontation. PFR File, Tab 3 at 2-3. As explained above, however, the supervisor's testimony does not support this conclusion.

The appellant also argues that an employee statement gathered at the time of the incident reveals that both the appellant and the coworker were exchanging insults. PFR File, Tab 3 at 4-5; IAF, Tab 18 at 20. If we were to credit the uncorroborated information in this unsworn written statement, it would tend to show that the coworker was not entirely passive during this confrontation, but it would do little to undermine the consensus of the percipient witnesses that the appellant was, in fact, the aggressor. IAF, Tab 18 at 18-20; HT at 64 (testimony of the supervisor), 80-81 (testimony of a coworker witness), 94 (testimony of the coworker). The appellant further argues that the administrative judge overlooked the testimony of one witness who testified that the coworker was practically daring the appellant to hit him and only backed away when he saw other employees coming to intervene. PFR File, Tab 3 at 3; HT at 79, 81 (testimony of the coworker witness). However, the witness testified that the coworker told the appellant to "[g]o ahead and do it, then, because you know you won't," only after the appellant physically barred the coworker from leaving the confrontation. HT at 48-49 (testimony of the supervisor), 93-94 (testimony of the coworker). For this reason, we are not persuaded by the appellant's argument that both he and his coworker engaged in unprofessional behavior and deserved similar treatment

under the zero tolerance policy. PFR File, Tab 3 at 6-8. Although the coworker could perhaps have handled the situation better, it appears that the appellant allowed him little alternative but to engage in the conflict.

The appellant further argues that the administrative judge failed to consider that the municipal court dismissed the "erroneous injunctions" against workplace harassment filed by his supervisor and coworker. PFR File, Tab 3 at 7. The record shows that, on December 16, 2019, the appellant's coworker petitioned for an injunctive order against the appellant, and that the court dismissed the petition 7 days later. IAF, Tab 38 at 10-11, 15; HT at 69 (testimony of the supervisor). However, the record does not reveal the basis for the dismissal, and so we are unable to draw any conclusions from this dismissal about the credibility of the appellant's coworker or the veracity of his claims. Furthermore, contrary to the appellant's assertion on review, the supervisor testified that the municipal court granted his petition for an injunction. HT at 68-69 (testimony of the supervisor). The appellant has not identified any evidence to contradict his supervisor's testimony.

The appellant appears to argue that the agency committed an unfair labor practice (ULP). PFR File, Tab 3 at 4-6. However, even if this is true, the Board lacks jurisdiction to decide ULP claims, *Clarry v. Department of Transportation*, 18 M.S.P.R. 147, 153 (1983) *aff'd*, 795 F.2d 1016 (Fed. Cir. 1986) (Table), and the appellant has not explained how this ULP relates to his claim of uniformed service discrimination. The appellant further argues that the agency's actions violated the due process provision of the applicable collective bargaining agreement, that his emergency placement prevented him from speaking to the Postal Inspectors when they arrived shortly after he was sent home, and that the supervisor put him on emergency placement at the behest of higher management. PFR File, Tab 1 at 6-7. However, the appellant likewise has not explained the relevancy of these matters to his claim of uniformed service discrimination. We further note that there is no evidence to contradict the supervisor's testimony that

putting the appellant on emergency placement was his own idea, HT at 50 (testimony of the supervisor), and in any event, the appellant has not advanced any theory of antimilitary animus with respect to this unidentified higher management official.

Finally, the appellant argues that U.S. Marines are perceived as violent and dangerous and that the supervisor's expression of fear is proof of antimilitary animus. PFR File, Tab 3 at 6, 8. However, we decline to accept the appellant's unsupported assertion that Marines are perceived as violent and dangerous, and we further decline to impute the supervisor's expression of fear to the appellant's military service rather than to his physically aggressive and hostile actions in the workplace.

For the reasons explained in the initial decision, we affirm the administrative judge's conclusion that the appellant failed to show that his uniformed service was a substantial or motivating factor in his supervisor's decision to place him on paid emergency leave.

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.